MICHAEL T. SOLOVEY, District Attorney, Juneau County
You request my opinion whether there is a probable violation of sec. 946.13, Stats., under the following statement of facts.
A member of the Juneau County Board, first elected in the spring of 1974, is a pharmacist who has had business relationships with county institutions including the county infirmary for some 18 years. These relationships include supplying the county infirmary with miscellaneous merchandise on an "as needed" basis and contracting to supply prescription drugs to patients under medical assistance and "medicaid" programs as provided by secs. 49.46, 49.47, Stats. Some of the medicaid patients are residents of the county infirmary and others are not. Prescription sales to all such patients are substantially in excess of $2,000 per year. Sales of miscellaneous merchandise amount to substantially less than $2,000 per year.
You indicate that the state has assumed payment of all prescription needs of aged indigents under the medical assistance or supplemental security income programs as of January 1, 1974. All billings are made to Wisconsin Physicians Service of Madison, Wisconsin, which is the private contractor retained by the State of Wisconsin for this purpose. You state that it is not known whether payment of these bills has been assumed partially or entirely by the federal government, but that it is certain that Juneau County pays no portion of these prescription bills directly and that these costs do not appear in any form in the budget of the county infirmary.
You state that the administrator (superintendent) of the infirmary, as part of his day-to-day supervision, is vested with discretion to arrange for the furnishing of services to residents in the nature of pharmaceutical prescriptions. The superintendent is under the supervision of a county board committee, which for the purposes of this opinion has powers of the board of trustees appointed under sec. 46.18, Stats. I am advised that Juneau County has transferred the powers of such board of trustees to a five-member committee of the county board, acting under secs.59.06 and 59.025, Stats., as created by ch. 118, Laws of 1973, and that the supervisor-pharmacist is not a member of such committee. *Page 110 
Section 946.13, Stats., provides in part:
 "PRIVATE INTEREST IN PUBLIC CONTRACT PROHIBITED. (1) Any public officer or public employe who does any of the following may be fined not more than $500 or imprisoned not more than one year or both:
 "(a) In his private capacity, negotiates or bids for or enters into a contract in which he has a private pecuniary interest, direct or indirect, if at the same time he is authorized or required by law to participate in his capacity as such officer or employe in the making of that contract or to perform in regard to that contract some official function requiring the exercise of discretion on his part; or
 "(b) In his capacity as such officer or employe, participates in the making of a contract in which he has a private pecuniary interest, direct or indirect, or performs in regard to that contract some function requiring the exercise of discretion on his part.
"(2) Subsection (1) does not apply to the following:
 "(a) Contracts in which any single public officer or employe is privately interested which do not involve receipts and disbursements by the state or its political subdivision aggregating more than $2,000 in any year." (Emphasis added.)
I am of the opinion that public contracts are involved but that the supervisor-pharmacist is probably not in violation of sec.946.13, Stats.
There is no violation of the statute with respect to the purchases of miscellaneous merchandise because the dollar volume of those sales is within the $2,000 exemption. Sec. 946.13 (2) (a), Stats.
The public contracts with respect to prescription drugs are primarily between the pharmacist and the state. The state has authorized Wisconsin Physicians Service to process and pay claims directly to suppliers if submitted within standards approved by the Wisconsin Department of Health and Social Services. Prior approval by Health and Social Services is required as to certain items. The superintendent of the infirmary is acting primarily for *Page 111 
the state in selecting the supplier and the superintendent is partially insulated from the county board in exercising such power.
Section 46.18, Stats., provides that every county infirmary "shall (subject to regulations approved by the county board) be managed by a board of trustees" chosen by the county board. The powers and duties of the trustees can be transferred to a committee of the county board pursuant to secs. 59.06 and 59.025, Stats., as created by ch. 118, Laws of 1973. 63 OAG 256 (1974); see also 21 OAG 1036 (1932). Such trustees or committee would have the powers provided in secs. 46.18, 49.19, Stats., which include the power to appoint a superintendent for day-to-day management. The superintendent is only removable by the trustees or committee for cause. While you should review the resolutions creating the county infirmary and transferring power of the trustees to the committee of the board, it appears that the superintendent is fairly well insulated from direct supervision by the county board. There is chance of favoritism, however, since the county board selects the members of the board committee managing the institution and also holds latent power to abolish such committee, reinstitute a board of trustees, or abolish the institution itself.
In 28 OAG 58 (1939), it was stated that a dentist who was a member of the county board would be in violation of then sec.348.28, Stats., if he performed services for an indigent, which services had been approved in advance by the county pension department, since the bill for services would ultimately be paid out of the children's aid fund which was in part created by appropriations by the county board.
The prescription services we are concerned with are those provided under secs. 49.46, 49.47, Stats. Former sec. 49.52 (3) (b), Stats. (1971), provided that "Each county shall be liable for its pro rata share of the medical expenses paid by the state under ss. 49.46 and 49.47." If that statute were still applicable, the reasoning in 28 OAG 58 (1939), would apply as the pharmacist-supervisor would be in a position to vote on the funding of such pro rata share. However, sec. 49.52 (3) (b), Stats., was amended by the 1973 legislature to release the county from such liability. Sec. 260v of ch. 90, Laws of 1973.
If further insulation is deemed desirable, the Department of Health and Social Services and the county board committee *Page 112 
supervising the infirmary could consider the advisability of having the superintendent select the supplier of prescription services on an annual bid basis. Such procedure would have a number of advantages, including the possibility of a more favorable price.
BCL:RJV